IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case No.  5:23CR50056-001 |
| | ) | |
| JIMMY D. FANT, JR. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the defendant, Jimmy Fant, by undersigned counsel, and does hereby respectfully move this Court as to the following: for a downward variance from the advisory guideline imprisonment range.  Defense counsel anticipates that the length of time necessary for the sentencing hearing should not exceed one hour.

PROCEDURAL BACKGROUND

On September 29, 2023, Mr. Fant appeared before Honorable Timothy Brooks, District Judge, for an arraignment and change of plea.  Mr. Fant waived his right to proceed by Grand Jury and agreed to be charged by an information with one count of wire fraud in violation of 18 U.S.C. § 1343, and one count of money laundering in violation of 18 U.S.C. §1957.  On that same day, Mr. Fant voluntarily entered a plea of guilty to both counts in the information.  Following his change of plea, Mr. Fant was released on a $5,000 unsecured bond with pretrial supervision pending his sentencing date. Mr. Fant has been fully compliant with his conditions of release. The final presentence report in this matter was filed on January 4, 2024.  Sentencing is scheduled for April 3, 2024.

FACTS

In February of 2023, agents with the Federal Bureau of Investigation began investigating Mr. Fant. In 1999, Mr. Fant was employed by White River Harwood. In 2015, Mr. Fant was promoted to chief financial officer. In January of 2023, Mr. Fant left his job at White River. The company hired another account and discovered Mr. Fant's fraudulent activity. The investigation determined that from 2014 to 2022, Mr. Fant fraudulently used the company's payroll system to overpay himself funds identified as commission payments that he was not entitled to receive. It also revealed that Mr. Fant used the payroll system to overpay his 401k contributions and to pay loans he made on his 401k from 2016 to 2023. Finally, Mr. Fant made multiple unauthorized transfer of funds from investment accounts held by White River Hardwood owners to his own account from 2020 to 2023. The total amount of loss attributed to Mr. Fant is $5,267,292.38.

As a result of this investigation, law enforcement has already seized the following from Mr. Fant as proceeds from his conduct: Real property located at 109181 S. 4646 Rd., including a 1998 Fleetwood Mobile Home, in Sallisaw, OK, (Case no. 5:23-CV-05051, W.D. Ark., Jul. 17, 2023), $100,157 in cash, a 2021 Kubota tractor, a 2020 Hyundai Kona, and various items of jewelry. Mr. Fant voluntarily waived the Grand Jury process, and agreed to be charged by information. He accepted responsibility for his conduct and pleaded guilty on September 29, 2023.

LAW AND ANALYSIS

Since 2005, the guidelines have been considered advisory, and are now just one of several criteria a sentencing court considers when imposing a sentence. *United States v. Booker,* 543 U.S. 220, 223 (2005). The process a sentencing court must follow since *Booker* involves three steps; first, it must determine the appropriate advisory sentencing range, then examine the propriety of a traditional departure under the guidelines, and finally consider the factors set forth in 18 U.S.C. §

3553(a) to determine whether to vary from the guidelines. *See U.S. v. Garlewicz*, 493 F.3d 933, 937 (8th Cir. 2007).

### A. Determination of Advisory Guideline Range

Three guideline determinative objections remain on behalf of Mr. Fant. Defense objection two relates to the sophisticated means enhancement. Defense objection three relates to the substantial financial hardship enhancement. Defense objection five relates to the application of the zero-point offender reduction. Defense objection five is tied to this Court's ruling to the substantial financial loss enhancement at defense objection three. As such, Mr. Fant maintains his objections related to the application of sophisticated means and substantial financial loss.

#### 1. *Mr. Fant's conduct was not sophisticated*

Pursuant to §2B1.1(b)(10)(C), if the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct that constituting sophisticated means, an increase of 2 levels is applicable. The term "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. U.S.S.G. §2B1.1(b), cmt. app. note 9. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. *Id.* Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means. *Id*.

Although there is no mechanical test to determine whether a scheme is sufficiently sophisticated to qualify for the enhancement, some factors include: (1) the overall length of the scheme; (2) the use of forged or false documents; and (3) the use of Ponzi-type payments. *United*

*States v. Meadows*, 866 F.3d 913, 917-18 (8th Cir. 2017)[1]. Overall, the sophistication of the offense conduct is associated with the means of repetition, the coordination required to carry out the repeated conduct, and the number of repetitions or length of time over which the scheme took place. *Id.* See also *United States v. Rosen*, 782 Fed. Appx. 498, 499-500 (8th Cir. 2019)(enhancement applied where scheme lasted 4 years, had 13 victims, the defendant created the fraudulent documents, repetitive pitches to victims, and efforts to conceal activity).

Mr. Fant's actions in the instant offense did not involve especially complex or especially intricate offense conduct. He did not use fictitious entities, corporate shells, or offshore financial accounts. The crux of the reasoning for this application by U.S. Probation predominantly relies upon Mr. Fant's position as chief financial officer and his access to business accounts. Those facts however are already accounted for in the enhancement for abuse of private trust in paragraph 55 of the final pre-sentence report.

Moreover, while Mr. Fant's offense lasted approximately nine years, he did not forge documents or engage in Ponzi—type payments. This conduct did not involve complicated financial transactions. Mr. Fant used the company's payroll software to pay himself money that he was not entitled to, and he transferred money from his employer's investment accounts to his own personal accounts. There is no evidence that he created false identities, or that he recruited other people to engage in transactions to insulate himself. Given the nature and circumstances of this offense, the two-level enhancement for sophisticated means is not applicate in this case.

2. *The offense did not result in substantial financial hardship*

Mr. Fant recognizes that his conduct caused financial loss to the victim in this case, and he is remorseful and has accepted responsibility for his conduct. He is not attempting to dimmish

---

[1] The scheme in *Meadows* lasted seven years, involved a large amount of fraud from 69 victims, Ponzi payments, improper use of tax and investment forms, and forged statistics.

how his actions affected the victim in this case. However, to preserve his legal rights, Mr. Fant does maintain his argument that the loss in this case was not substantial as required by the enhancement in the guidelines.

If the offense involved substantial financial hardship to one or more victims, a 2-level enhancement is applied in the guideline calculation. U.S.S.G. § 2B1.1(b)(2)(A)(iii). In determining whether the offense resulted in substantial financial hardship, the Court shall consider the following factors: (1) becoming insolvent; (2) filing for bankruptcy; (3) suffering substantial loss of a retirement, education, or other savings or investment fund; (4) making substantial changes to his or her employment, such as postponing retirement; (5) making substantial changes to living arrangements, such as relocating to a less expensive home; and (6) suffering substantial harm to ability to obtain credit.

The facts and circumstances of this case do not rise to the level of *substantial* financial hardship as envisioned by the sentencing guidelines. The victims in this case did not become insolvent. In fact, the business remained opened and continued to operate. It does not appear that they had to lay off employees. In fact, it was able to hire a new account, and they have been able to hire competent counsel for this matter. The victim did not need to file for bankruptcy. Additionally, while the victims note they took out a loan against their retirement, there is no indication that there was any loss of retirement or education, let alone a *substantial* loss. Nor is there any refence that there was a substantial change in employment or postponing retirement. Although it is alleged that harm in this case may have impacted the business' ability to grow, that cannot be said to be a substantial hardship or substantial change in employment. There are no circumstances that suggest the victims had any substantial changes in relocating. Nor are there any indications that the victim suffered a substantial harm in the ability to obtain credit.

While the victims in this case have suffered a significant financial loss of money, that loss amount does not assume substantial financial hardship occurred according to the guidelines. As such, the enhancement for substantial financial loss is not applicable.

3. *Mr. Fant should receive a reduction for zero-point offenders*

Mr. Fant is eligible for a 2-level decrease for zero-point offenders pursuant to U.S.S.G. § 4C1.1. Under that section, the level decrease is warranted if Mr. Fant did not receive any criminal history points, did not receive an adjustment under §3A1.4, did not use violence or credible threats of violence, did not result in death or serious bodily injury, the offense is not a sex offense, did not personally cause substantial financial hardship, did not possess a firearm or dangerous weapon, did not involve §2H1.1, §3A1.1, §3A1.5, or §3B1.1, and did not engage in a continuing criminal enterprise.

The only factor of the ten identified in this section that could apply to prevent Mr. Fant from eligibility for the reduction would be the substantial financially hardship identified at §4C1.1(a)(6). For the reasons stated above, Mr. Fant maintains that the circumstances of this case did not result in *substantial* financial hardship. As no other subsection applies in Mr. Fant's case, he is eligible for a 2-level decrease.

For all the above reasons, the enhancements for sophisticated means and substantial financial hardship are not applicable. Removal of paragraphs 51 and 53 would reduce the adjusted offense level to 28. After application for zero-point offenders, the adjusted offense level should be 26. After acceptance of responsibility, the total offense level should be 23. The guideline imprisonment range should be 46 to 57 months imprisonment.

B. **Applicability of Traditional Departure**

Mr. Fant is not seeking a traditional departure.

### C. Application of § 3553(a) Factors to Determine if a Variance is Warranted

18 U.S.C. § 3553(a) is entitled "Factors to be considered in imposing a sentence," and begins with the mandate that:

> "The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection."  18 U.S.C. § 3553(a).  Emphasis added.

In deciding on an appropriate sentence, the court should consider the nature and circumstances of the offense, and the history and characteristics of the defendant.  It should also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.  In addition, the court should also consider whether or not the sentence would provide adequate deterrence and protect the public from further crimes of the defendant.  Along with a consideration of the advisory guideline range, the court should also contemplate the need for the sentence imposed to provide the defendant with medical treatment, vocational training, education, or correctional treatment.  The court should also address the need for the sentence imposed to avoid unwarranted sentencing disparities.  Each of these purposes can be satisfied with regard to Mr. Fant with a downward variance.

### 1. Nature and Circumstances of the Offense

Mr. Fant is ashamed for his actions.  He knows that his actions affected the victims in this case. Every day he lives with the guilt and remorse of taking money that did not belong to him. While this offense is a felony, and therefore very serious, in the spectrum of federal offenses it is towards the less serious end.  No weapons or threats were involved. No one was physically injured. This is not a violent or drug related offense.

Ms. Fant's conduct did not involve especially complex conduct.  While the guidelines attribute an enhancement for sophisticated means, essentially Mr. Fant used his position of trust

as chief financial officer to pay himself monies he was not entitled to receive. It did not involve multiple states, countries, and/or creating fraudulent documents. *See*, *e.g.*, *United States v. Ryan Payne*, No. 5:17CR50046-001 (W.D. Ark., Jul. 26, 2017); *United States v. Jason Smith*, No. 5:18CR50006-001 (W.D. Ark., Jan. 23, 2018).

While not at all justifying his conduct, the circumstances surrounding Mr. Fant's conduct provide mitigating context. As noted below, Mr. Fant suffers from lifelong medical issues. He has been a type 1 diabetic since age 2. He also suffers from coronary artery disease, hypertension, neuropathy, and obesity. He takes multiple medications and has consistently been in and out of the hospital for years. In addition to that, as Mr. Fant described it, his family has been a "medical tragedy."

From approximately 1997 through approximately 2018, Mr. Fant's wife has been diagnosed with multiple different types of cancers. She was hospitalized frequently. She underwent chemotherapy multiple times. She has suffered pulmonary embolisms and underwent regular mental health and psychiatric treatment. In 2009, Mr. Fant's daughter nearly died from heart issues. After hospitalization, his daughter required a pacemaker and regular checkups. Mr. Fant's son Jimmy also suffers from diabetes. His son also frequently experiences ketoacidosis, extremely fluctuating blood sugars and health issues related to his stomach. In approximately 2015, Mr. Fant's son experienced an episode of ketoacidosis, his organs shut down and he passed out. His son had to be rushed to the hospital. After treatment, the prescribed medication that his son needed was not covered by insurance.

All of these family conditions were occurring during the course of this offense. As his family experienced these medical emergencies, it often resulted in emergency medical stays and treatments and necessary medications not covered by Mr. Fant's health insurance. With the

medical bills mounting, Mr. Fant felt pressured and helpless to protect his family and ensure they had the medical care they needed.  As if these medical issues were not enough, Mr. Fant and his family suffered even more in 2009 when their house burnt down and again in 2012 when their house flooded.  Each time they lost everything, and the insurance did not fully compensate them.  The culmination of these tragedies, the mounting medical debt, and reoccurring monthly expense medications led to Mr. Fant's shameful decisions to take money that didn't belong to him.  While this conduct does not excuse his conduct, they do provide mitigating context.

Mr. Fant has accepted responsibility for his crime and understands that he must pay restitution back.  Mr. Fant is ashamed of his actions.  He accepted responsibility early, waived his right to proceed via Grand Jury, agreed to be charged by information, and pled guilty.  As a result of this investigations, the Government has already seized assets tied to this conduct, and Mr. Fant has willingly executed documents necessary to quickly facilitate the forfeiture of items.  To date, the Government has seized the following:  Real property located at 109181 S. 4646 Rd., including a 1998 Fleetwood Mobile Home, in Sallisaw, OK, (Case no. 5:23-CV-05051, W.D. Ark., Jul. 17, 2023), $100,157 in cash, a 2021 Kubota tractor, a 2020 Hyundai Kona, and various items of jewelry.  The proceeds from these items can begin the process of repayment to the victims in this matter.

**2. History and Characteristics of the Defendant; Medical Treatment, Vocational Training, Education**

Mr. Fant is 60 years old. He suffers from very serious medical conditions.  He has suffered from type 1 diabetes since age 2.  He currently takes 4 to 5 shots of insulin on a daily basis to control his blood sugar levels.  He often suffers from fatigue, ketoacidosis, fainting spellings, and kidney failure due to his lifetime struggle with diabetes.  Additionally, as often is the case with diabetics, Mr. Fant suffers from issues with open wounds.  Since June of 2023, Mr. Fant has

9

suffered from various open wounds on his right leg that have required frequent hospitalization, emergency room visits, multiple surgeries, a wound vacuum, infections, and constant nurse visits. As recently as March of 2024, Mr. Fant has been treated for an infection in his right leg for open wounds. These conditions hinder Mr. Fant's movement and ability to walk, exert himself, or stand for long periods of time.

In addition to his diabetes and complications, Mr. Fant also suffers from kidney issues. In June of 2023, Mr. Fant's kidney levels were operating at a level recognized as having kidney disease. Mr. Fant also suffers from coronary artery disease, hypertension, neuropathy, and obesity. All of these medical conditions are important mitigating factors. This is particularly of concern given that the Bureau of Prisons has a history of not adequately addressing medical concerns of inmates[2] The longer sentence the Court imposes, the more physically difficult it will be for Mr. Fant to serve his time.

Beyond Mr. Fant's current medical issues, this is his first ever felony. He has no prior criminal history. He has no history involving drugs or weapons. Aside from the conduct in this case, he has led a law-abiding life. He is well education. He graduated high school and has a bachelor of science in accounting from Louisiana Tech University. He has a long history of employment including years of employment at Montgomery Ward and Stone Container Corp. Prior to his fraudulent activities at White River, he had been employed there approximately 14 years.

3. **Adequate Deterrence; Protection of the Public**

Mr. Fant is not a violent person. This is his first ever felony. He has no history of violence, weapons, or drug use. Any danger he poses to the public is minimal. He will be subject to strict

---

[2] U.S. Dep't of Justice, Office the Inspector General, Review of the Federal Bureau of Prisons' Medical. Staffing Challenges, i (2016).

conditions this Court can impose, which could include home detention and electronic monitoring. These conditions will keep him under the Court's thumb. He will be closely monitored to ensure he continues to not be a threat to the public, and to ensure that she does not engage in criminal conduct.

It should also be noted that research has shown that increases in severity of punishments do not yield significant marginal deterrent effects. Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28-29 (2006). Research regarding white collar offenders in particular found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995). Additionally, Mr. Fant's lack of serious criminal history suggest that he is not likely to recidivate. Offenders like Mr. Fant in criminal history category I and zero criminal history points have a lower recidivism rate.[3] Moreover, individuals with additional education after high school, like Mr. Fant, are less likely to recidivate.[4] Individuals aged 60 and older, like Mr. Fant, also have the lowest recidivism rates.[5] Additionally, when combining the factors of individual age 60 and over and criminal history category I, recidivism rates were the lowest at 11.3 percent.[6] Lastly, defendants convicted of fraud offenses are also less likely to recidivate as compared to other offenders.[7]

While out on pretrial release, Mr. Fant has strictly adhered to his release conditions. He has not tested positive for any substances, and he has not violated new laws. Mr. Fant has been

---

[3] U.S.S.C., *Recidivism of Federal Offenders Released in 2010*, p. 25-28 (Sept. 2021).
[4] Id. at 31.
[5] Id. at 24-25.
[6] Id. at 29-30.
[7] Id. at 32-33; see also U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, pg. 30 (May 2004).

and will be deterred from future criminal conduct as a result of this offense and from a sentence that reflects a downward variance.

### 4. Respect for the law; Provide Just Punishment

A downward variance is just in light of the circumstances of Mr. Fant's non-violent offense. It involves losing complete liberty by having to abide by specific conditions of release for an extended period of time, with the risk of returning to jail. His sentence will also include a large amount of restitution that will take him years to satisfy in addition to any other conditions this Court may impose. Moreover, as a convicted felon, he has lost important civic rights and will forever be labeled a felon.

As noted in this case, Mr. Fant has significant medical concerns. This is important mitigating information because health problems before and during incarceration "accelerate the aging processes to an average of 11.5 years older than chronological ages after age 50."[8]

Mr. Fant has demonstrated respect for this Court and the law by complying with conditions of his release. He admitted his conduct early on in this matter. Not only did he accept responsibility for his offense, but he voluntarily waived his right to proceed by grand jury, saving the government and this Court time and resources. Ms. Fant is ashamed of his conduct, and the effect it has had on the victims. Just punishment can be achieved in this case with his felony conviction, a downward variance, and ensuring Mr. Fant pays restitution. Every payment he makes is a constant reminder of how serious his conduct was, how it affected the victim, and is a reminder of his punishment. A guideline sentence would delay Mr. Fant's ability to pay those obligations, would cause additional burden on taxpayers, and substantially impact Mr. Fant's health. Under the circumstances of this case, a downward variance is reasonable and fair.

---

[8] U.S. Dep't of Justice, National Institute of Corrections, *Correctional Health Care: Addressing the Needs of the Elderly, Chronically Ill, and Terminally Ill Inmates*, at 10 (2004).

## 5. Need to Avoid Unwarranted Sentenced Disparities

After a balancing of the § 3553(a) factors, a downward variance not result in an unwarranted disparity. While Mr. Fant recognizes that each case is unique, and that many cases may be distinguished from his, he submits the following cases as a guide for the Court.

Other similar defendants who engaged in fraudulent activity over many years which resulted in a large amount of loss have received shorter sentences than the recommend range in Mr. Fant's case. *See*, *e.g.*, *United States v. Connie Guild*, No. 5:17CR50026-001 (W.D. Ark., Apr. 13, 2017)(county collector embezzled over $1,033,000 over the course of 10 years, sentenced to 34 months); *United States v. Jimmy Story*, No. 5:17CR50063-001 (W.D. Ark., Nov. 27, 2017)(finance director, over the course of eight years embezzled over $1,500,000, sentenced to 46 months).

## CONCLUSION

A significant downward variance is sufficient but not greater than necessary to achieve the goals of sentencing under § 3553(a).

WHEREFORE, Mr. Fant respectfully requests this Court grant a downward variance from the advisory guideline range.

Respectfully submitted,

BRUCE D. EDDY
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF ARKANSAS

By:    /s/ *Joe Alfaro*
Joe Alfaro
Assistant Federal Public Defender
112 W. Center St., Ste. 300
Fayetteville, AR 72701
(479) 442-2306

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Kenneth Elser, AUSA, Alma Calderon, U.S. Probation Officer, and I hereby certify that I delivered a copy to the following non CM/ECF participants: none.

                                    /s/ *Joe Alfaro*
                                    Joe Alfaro
                                    Assistant Federal Public Defender