IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


UNITED STATES OF AMERICA                    PLAINTIFF

v.                         CASE NO. 5:23-CR-50056

JIMMY FANT, JR.                             DEFENDANT


_____


WAIVER OF INDICTMENT, CHANGE OF PLEA HEARING

BEFORE THE HONORABLE TIMOTHY L. BROOKS

SEPTEMBER 29, 2023

FAYETTEVILLE, ARKANSAS


_____

1                        A P P E A R A N C E S

2

3      FOR THE PLAINTIFF:

4      KENNETH P. ELSER
       United States Attorney
5      414 Parker Avenue
       Fort Smith, Arkansas 72901
6      (479) 494-4071
       kenny.elser@usdoj.gov
7

8
       FOR THE DEFENDANT:
9
       JOSE MANUEL ALFARO
10     Federal Public Defender
       112 West Center Street, Suite 300
11     Fayetteville, Arkansas 72701
       (479) 442-2306
12     joe_alfaro@fd.org

13

14

15

16

17

18

19

20

21

22

23

24

25

8:54AM 1          THE COURT:  The United States versus Jimmy Fant,

2      Jr. is before the Court.  Our case number is 5:23-CR-50056.

3      The matter is before the Court for purposes of a waiver of

4      indictment, consent to charge by information and an

8:58AM 5      anticipated guilty plea.

6          Kenny Elser appears on behalf of the United States.

7      Joe Alfaro is present representing Mr. Fant.

8          Good morning, Mr. Fant.

9          THE DEFENDANT:  Good morning.

8:58AM 10          THE COURT:  Sir, according to information provided

11      to chambers, I understand today that you are seeking

12      permission to waive the formal indictment process and to

13      consent to being charged by information for the offenses of

14      wire fraud and money laundering, and the Court understands

8:59AM 15      it's your intent to plead guilty to those two offenses.

16          So that's my understanding of why this hearing has

17      been scheduled.  Is that your understanding as well?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Before I can determine whether it would

8:59AM 20      be appropriate to allow you to go down that path or not,

21      I'll need to ask you a series of questions.  I'll require

22      that your answers be given under oath.  I should advise you

23      first, though, that if you were to make a false statement in

24      response to any of my questions, that in and of itself could

8:59AM 25      result in additional charges for things like perjury or

8:59AM 1    making false statements.  Do you understand this?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Now, if at any time I ask you a

4    question that you do not understand, and many of my

8:59AM 5    questions will begin with an explanation of certain rights

6    that you have followed by, "Do you understand these rights?"

7    If at any time you don't understand my question or you don't

8    understand the rights that I have explained, it's important

9    that you let me know that so I can do my best to get us back

9:00AM 10   on the same page.  So if we run into one of those situations

11   where you don't understand, will you please let me know?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Please stand and raise your

14   right hand to be sworn.

9:00AM 15             (Defendant Sworn.)

16             THE COURT:  You may be seated.  We will begin with

17   some general background questions.  What is your full name?

18             THE DEFENDANT:  Jimmy Donald Fant, Junior.

19             THE COURT:  How old are you?

9:00AM 20             THE DEFENDANT:  59.

21             THE COURT:  Where do you live?

22             THE DEFENDANT:  Muldrow, Oklahoma.

23             THE COURT:  Are you married?

24             THE DEFENDANT:  Yes.

9:01AM 25             THE COURT:  Do you have children?

9:01AM  1              THE DEFENDANT:  Yes.

        2              THE COURT:  How many and what are their ages?

        3              THE DEFENDANT:  Four.  30, 29, 28 and 27.

        4              THE COURT:  How far did you go in school?

9:01AM  5              THE DEFENDANT:  Graduated from college, BS in

        6      accounting.

        7              THE COURT:  Where did you attend college?

        8              THE DEFENDANT:  Louisiana Tech University.

        9              THE COURT:  What year did you graduate?

9:01AM 10              THE DEFENDANT:  1985.

       11              THE COURT:  What types of jobs have you held in the

       12      last three years?

       13              THE DEFENDANT:  Just one, accounting.

       14              THE COURT:  In the course of setting the matter for

9:01AM 15      a hearing, the Court -- and in reading the pretrial services

       16      report -- the Court has been informed of certain physical

       17      and medical conditions that you have.  How would you

       18      describe the current status of your physical condition?

       19              THE DEFENDANT:  Well, my leg and my foot with the

9:02AM 20      wound and the care, my diabetes, my kidney problems, some

       21      other stuff they spotted that I haven't had a chance to look

       22      at that.  Diabetes, I've been taking insulin 58 years.

       23              THE COURT:  All right.  What medications are you on

       24      today?

9:02AM 25              THE DEFENDANT:  Currently, the antibiotics for the

9:02AM  1  legs.  I couldn't tell you the names of those.  Insulin
        2  multiple times a day.  And blood pressure medicine.  They
        3  took me off everything else because of my kidneys until they
        4  can figure out what's going on.
9:02AM  5          THE COURT:  Regardless of the names of those drugs,
        6  is there anything about the medications that you have
        7  described that would interfere with your ability to
        8  understand what's going on in the courtroom?
        9          THE DEFENDANT:  No, Your Honor.
9:03AM 10          THE COURT:  Other than the medications for the
       11  physical conditions that you have, have you consumed any
       12  other medication, drug, alcohol, or any substance in the
       13  last 24 hours that might be interfering with your ability to
       14  understand what's going on today?
9:03AM 15          THE DEFENDANT:  No, Your Honor.
       16          THE COURT:  Have you ever been evaluated or treated
       17  by a doctor for a mental health condition?
       18          THE DEFENDANT:  No, Your Honor.
       19          THE COURT:  Next, I have some questions about your
9:03AM 20  attorney, Mr. Alfaro.  I take it that you have had him as
       21  your counsel for some amount of time now?
       22          THE DEFENDANT:  Yes, Your Honor.
       23          THE COURT:  Are you satisfied with the amount of
       24  time that he has spent meeting with you and working on these
9:03AM 25  matters?

9:03AM 1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Prior to today, has he sat down and

3   reviewed with you the proposed resolution of the charges

4   that I previewed at the beginning of our hearing with you?

9:04AM 5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Has he explained what would happen in

7   this hearing?

8          THE DEFENDANT:  Yes, multiple times.

9          THE COURT:  Along the way, has he answered any and

9:04AM 10  all questions that you may have had?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Would you say that you are fully

13  satisfied with his legal services?

14         THE DEFENDANT:  Yes, Your Honor.

9:04AM 15         THE COURT:  There are several items of business

16  that we need to take up today.  The first is to make sure

17  that you understand your rights with regard to what we call

18  the Grand Jury process.

19         In the federal system, the United States government

9:04AM 20  cannot charge someone with a crime unless a Grand Jury first

21  determines that there is probable cause that the crime has

22  occurred and that the target subject is the person that

23  committed the crime.

24         A Grand Jury is a body of citizens, typically

9:05AM 25  composed of 23 members of the community.  Here, the

9:05AM 1    community is the Western District of Arkansas.  These 23

2    members meet from time to time.  When they meet, at least 16

3    of the 23 must be present in order to have a quorum to

4    conduct business.

9:05AM 5          The Grand Jury is presented with information and

6    evidence from the United States.  At the conclusion of its

7    investigation, a vote is called.  It takes a vote of at

8    least 12 of the 23 jurors to determine that there is a true

9    bill of indictment.  And this is not a question of guilt or

9:06AM 10   innocence.  The question for the Grand Jury is whether there

11   is probable cause to believe that a crime has been committed

12   and that the subject is the person who committed the crime.

13         If at least 12 members vote that those findings are

14   true, then a person is said to be indicted.  If they don't

9:06AM 15   have at least 12 members voting in favor of a true bill,

16   then no indictment is returned and the government cannot

17   prosecute any charges.

18         This is the Grand Jury process that you have a

19   right to force the government to go through.  Now, like many

9:06AM 20   rights, you can also waive that right.  And my understanding

21   is you came in the courtroom today anticipating that you

22   were going to waive that right, but I need to make sure you

23   understand that you don't have to do that, because your

24   waiver must be an intentional and knowing waiver of this

9:07AM 25   right to the Grand Jury process.

9:07AM    1          Mr. Fant, do you understand the Grand Jury process
          2   as I have described?
          3          THE DEFENDANT:  Yes, Your Honor.
          4          THE COURT:  Do you understand that you have a right
9:07AM    5   to require the government to go through that process if they
          6   want to seek charges against you?
          7          THE DEFENDANT:  Yes, Your Honor.
          8          THE COURT:  Do you wish to waive that process?
          9          THE DEFENDANT:  Yes, Your Honor.
9:07AM   10          THE COURT:  All right.  Now, I've been presented
         11   today with a one-page written document called a waiver of
         12   indictment.  It appears to be signed by you and Mr. Alfaro.
         13          Do you recall reviewing this waiver of indictment
         14   with Mr. Alfaro?
9:08AM   15          THE DEFENDANT:  Yes.
         16          THE COURT:  Is this in fact your signature?
         17          THE DEFENDANT:  Yes, it is.
         18          THE COURT:  And when did you sign this?
         19          THE DEFENDANT:  It was recently.  I don't remember
9:08AM   20   the exact date.
         21          MR. ALFARO:  If I may, Your Honor.  We signed it
         22   the same date the plea agreement was signed.  I believe that
         23   was August 18th.
         24          THE COURT:  All right.  The waiver that I was
9:08AM   25   handed is undated.  May I date it for today, Mr. Alfaro?

9:08AM 1          MR. ALFARO:  Yes, Your Honor, that would be fine.

2     Thank you.

3          THE COURT:  The Court will make a finding that

4     Mr. Fant is competent today and that he has knowingly and

9:09AM 5     intentionally made a decision to waive his right to the

6     formal Grand Jury process, with the understanding that he

7     would be charged by information with the offenses of wire

8     fraud and money laundering.

9          Mr. Alfaro, have you had an opportunity review the

9:09AM 10    form and content of the information?

11         MR. ALFARO:  I have, Your Honor.

12         THE COURT:  Is it consistent with your

13    understanding of how the charges would be pled?

14         MR. ALFARO:  Yes, Your Honor.

9:09AM 15         THE COURT:  Mr. Fant, do you understand that you're

16    being charged by information with the offenses of wire fraud

17    and money laundering?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And you consent to being charged in

9:09AM 20    this fashion?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  All right.  The Court would ask the

23    clerk to file the information of record, as well as the

24    calendar.  So that takes care of two of three items of

9:10AM 25    business today, Mr. Fant.  The third item is how you intend

9:10AM  1  to plead to these charges.  And I need to advise you of a
       2  number of rights before I ask you how you wish to plead.
       3          I'd like to start with this premise.  Despite any
       4  conversations, despite any agreements up to this point, you
9:10AM  5  have an absolute right to plead not guilty to the two
       6  offenses that you have just now been charged with.
       7          Do you understand that?
       8          THE DEFENDANT:  Yes, Your Honor.
       9          THE COURT:  The reason that I like to make that
9:10AM 10  point is because if I accept your guilty pleas, you will be
      11  convicted at that moment, and as a consequence, you will
      12  have waived forever your right to have a jury trial and to
      13  have a jury decide whether you are guilty or not guilty of
      14  these two offenses.  Do you understand that?
9:11AM 15          THE DEFENDANT:  Yes, Your Honor.
      16          THE COURT:  And when we talk about one's right to a
      17  trial, there are several rights and protections that go
      18  along with your right to a trial.  These rights and
      19  protections are there for your benefit and to ensure the
9:11AM 20  fairness of the trial for you.
      21          Let me explain.  At a trial, a defendant such as
      22  yourself has the right to counsel.  And if you cannot afford
      23  an attorney, the Court would appoint an attorney or continue
      24  to appoint an attorney to represent you at the trial.
9:11AM 25          At the trial, a jury of 12 citizens of the

11

9:12AM 1  community would be impaneled to make the factual

2  determination of whether you are guilty or not guilty as

3  charged.  At the trial, you would have the right to see and

4  to hear and to cross-examine each of the government's

9:12AM 5  witnesses.  When the government finished, you would have the

6  right, although there would be no obligation, but you would

7  have the right to put on a defense.  If you sought to call

8  witnesses, you can do that and you can also use the Court's

9  subpoena power to compel any witnesses that you may wish to

9:12AM 10  call to come to the courtroom to provide that testimony.

11        Importantly, you yourself have a right to testify

12  as part of the defense.  Equally importantly, though, you

13  have a right under the Fifth Amendment not to testify.  In

14  other words, whether you testified at a trial of this

9:13AM 15  matter, that would be totally up to you.  You would make

16  that decision.

17        Perhaps the most important right that you would

18  have at a trial is the right to be presumed innocent.  And I

19  would explain to the jury and instruct the jury on what that

9:13AM 20  right means.  I would explain to the jury that a defendant

21  such as yourself in a criminal case has no burden to prove

22  anything, least of all a burden to prove that they are

23  innocent.  I would explain to the jury that the burden of

24  proof in a criminal trial is at all times on the government.

9:13AM 25  And the government's burden in a criminal trial is to prove,

9:13AM  1   beyond a reasonable doubt, each element of each respective

2   charge that is submitted to the jury for consideration.

3           I would explain to the jury that the presumption of

4   innocence continues all the way through the trial and into

9:14AM  5   the jury room, and that presumption alone is sufficient for

6   them to return a finding of not guilty unless -- unless --

7   after deliberating on the evidence, the jury comes to the

8   conclusion that the government has met its burden of proof.

9   If that is the jury's conclusion, then the presumption of

9:14AM  10  innocence would be erased and that would pave the way for

11  them to return a finding of guilty.

12          What I have summarized, Mr. Fant, are all of the

13  rights and protections that you would have if you wanted to

14  take these two charges to trial.

9:14AM  15          Do you understand these rights?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you understand that if you plead

18  guilty, you're waiving not only your right to a trial, but

19  you're waiving your right to a trial that comes with all of

9:15AM  20  those fundamental rights and protections?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Let's talk about the particular charges

23  here.  The information that has now been filed charges you

24  in Count One with the offense of wire fraud and in Count Two

9:15AM  25  with the offense of money laundering.

9:15AM 1          Has Mr. Alfaro explained to you the nature of what

2    these charges are?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Has he explained to you what all it is

9:15AM 5    in terms of evidence that the government would have to be

6    able to present to the jury in order to be able to sustain a

7    conviction on these two offenses?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Has Mr. Alfaro answered any and all

9:16AM 10   questions that you may have had about the nature of these

11   two charges?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you believe that you understand the

14   nature of these two charges?

9:16AM 15        THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Next, I want to make sure you

17   understand the potential consequences.

18         These are two separate offenses.  By statute, they

19   carry separate potential penalties.  I'm going to review

9:16AM 20   with you the maximum punishments authorized by statute for

21   each offense.

22         On the charge of wire fraud in Count One, you're

23   facing a maximum term of imprisonment for 20 years if you

24   plead guilty.  You could also be fined in a sum of not more

9:16AM 25   than $250,000.  You would also be subject to a term of

9:17AM 1  supervised release following your release from prison.  And
2  while you're on supervised release, you would be assigned to
3  a federal probation officer and they would monitor your
4  compliance with the conditions of supervised release.
9:17AM 5         If you were to be found in violation of one of
6  those conditions, then potentially you could be sent back to
7  the Bureau of Prisons because of the violation.
8         Another term of punishment is a $100 special
9  assessment that accrues with regard to every count of
9:17AM 10 conviction.  This offense also carries with it a restitution
11 obligation in an amount and to the victims as determined by
12 the Court at sentencing.
13        So each of the line items that I have just
14 summarized are the punishments that you're facing if you
9:18AM 15 plead guilty to Count One.  Do you understand that?
16        THE DEFENDANT:  Yes, Your Honor.
17        THE COURT:  Now, Count Two is a separate offense.
18 It has a separate set of statutory penalties, which include
19 a maximum term of imprisonment for 10 years; a maximum fine
9:18AM 20 of $250,000 or twice the value of the property involved in
21 the transaction; a term of supervised release for not more
22 than three years.  And that works the same way as I
23 explained earlier.  Another separate special assessment of
24 $100 and then restitution is also a potential punishment
9:18AM 25 here as well.

9:18AM  1          Do you understand these punishments that you're

2     facing if you plead guilty to the separate offense in Count

3     Two of money laundering?

4               THE DEFENDANT:  Yes, Your Honor.

9:19AM  5          THE COURT:  At sentencing, the Court has the

6     discretion to run its sentence in terms of these maximums

7     that I have described either concurrently, which is to say

8     run at the same time, or consecutively.  And that's a

9     decision that the Court is not in a position to make until

9:19AM  10    we reach the sentencing hearing.  But for our purposes

11    today, I need to make sure you understand that at least

12    potentially, the Court could, for example, run the terms of

13    maximum imprisonment consecutive.  And if I did that, then

14    you're looking at incarceration of up to 30 years; 20 years

9:20AM  15    on the wire fraud, 10 years on the money laundering equals a

16    maximum of 30 years total incarceration.

17          Do you understand that?

18               THE DEFENDANT:  Yes, Your Honor.

19               THE COURT:  The fines could be doubled as well.

9:20AM  20    The supervised release term would be run concurrent.  The

21    special assessment would be separate and would be

22    collectively doubled.

23          So do you understand how this works and the Court's

24    discretion as between running its sentence consecutive

9:20AM  25    versus concurrent?

9:20AM  1              THE DEFENDANT:  Yes, Your Honor.

     2              THE COURT:  Mr. Fant, has anyone forced you to

     3    plead guilty?

     4              THE DEFENDANT:  No, Your Honor.

9:21AM  5              THE COURT:  Has anyone threatened you or a loved

     6    one with harm if you don't plead guilty?

     7              THE DEFENDANT:  No, Your Honor.

     8              THE COURT:  So is your decision today to enter

     9    guilty pleas, is this something that you're seeking to do

9:21AM 10    voluntarily and completely of your own free will simply

    11    because you're guilty?

    12              THE DEFENDANT:  Yes, Your Honor.

    13              THE COURT:  Counsel, am I correct that the parties

    14    have entered into what is now a fully executed written plea

9:21AM 15    agreement?

    16              MR. ALFARO:  Yes, Your Honor.

    17              MR. ELSER:  Yes, Your Honor.

    18              THE COURT:  The original of that plea agreement has

    19    now been tendered to the bench.  I'd ask that a copy be

9:21AM 20    given to Mr. Fant.

    21              Sir, I would call your attention to the very last

    22    page, which is page 16.  Is that in fact your signature

    23    under the date of August 18?

    24              THE DEFENDANT:  Yes, Your Honor.

9:21AM 25              THE COURT:  Did you read this plea agreement in its

9:22AM  1  entirety before you signed it?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Did you confer with Mr. Alfaro before

4  you signed it?

9:22AM  5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Did he explain the terms of the plea

7  agreement to you?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Did he answer any and all questions

9:22AM  10  that you may have had?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Mr. Fant, I wish for you to understand

13  that this plea agreement is an agreement not unlike a

14  contract that is between you and the government.  This Court

9:22AM  15  is not a party to your plea agreement.  Consequently, this

16  Court is under no obligation to either approve your

17  agreement in total or to go along with any particular

18  provision or recommendation that may be contained in the

19  plea agreement or that may obligate the government, for

9:23AM  20  example, to make at sentencing.  Do you understand this?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Another way to make the point that I'm

23  trying to make here, Mr. Fant, is that despite any term or

24  provision in this plea agreement, this Court retains both

9:23AM  25  the authority and the discretion to impose any lawful

sentence up to the combined and collective statutory

maximums that you and I discussed a moment ago.

          Do you understand that?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  And all of that is true even if I

accept your guilty pleas today.  Do you understand that?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  So let's put the written plea agreement

to the side, because what I want to focus your attention on

next is the finality of your decision.

          As I explained earlier, once I accept your guilty

pleas, you're convicted.  The effect of that conviction is

identical to the effect of a jury considering the evidence,

deliberating and returning verdicts of guilty on these two

charges.  Consequently, you have no right, certainly no

automatic right, to come back later and ask to undo what

you're doing today.

          So, for example, if you wake up tomorrow morning or

next week or next month with some buyer's remorse over your

decision today and you think to yourself, oh, maybe I do

want to go to trial, maybe I do want to put the government

to its proof.  You have no right -- again, certainly no

automatic right -- to withdraw guilty pleas that the Court

has accepted simply because you changed your mind after

today.  Do you understand this?

9:25AM 1         THE DEFENDANT:  Yes, Your Honor.

2         THE COURT:  Mr. Fant, has Mr. Alfaro -- or anyone

3 else for that matter -- promised you that this Court is

4 going to impose any specific sentence?

9:26AM 5         THE DEFENDANT:  No, Your Honor.

6         THE COURT:  And that's good, because I have no idea

7 sitting here today what an appropriate sentence would look

8 like for you in this case.  I don't have nearly enough

9 information to conduct an appropriate sentencing analysis

9:26AM 10 today.  And so if I don't know what your sentence is

11 ultimately going to be, there's no one else in the world

12 that can know what your sentence is going to be either.

13         Do you understand this?

14         THE DEFENDANT:  Yes, Your Honor.

9:26AM 15         THE COURT:  What I can tell you and what I do wish

16 for you to understand is the sentencing framework and the

17 factors that hang on that framework that I will use and that

18 I will apply to all of the facts made known to the Court for

19 sentencing purposes.

9:26AM 20         The Court uses a two-step sentencing framework.  In

21 step one, the Court is obligated to calculate and then

22 consider what is referred to as the guideline range of

23 punishment.  And that is where the Court begins its

24 consideration of an appropriate sentence.  However, the

9:27AM 25 guideline range itself, which the Court is tasked to

9:27AM  1    calculate, the guideline range itself is not binding on the

2    Court.  The guideline range is merely advisory.  It's one

3    factor, among many.  That's why there's a step two.

4           Step two involves the Court applying several other

9:27AM  5    sentencing factors.  The purpose of the other factors in

6    step two is to allow the Court mechanisms by which it can

7    custom-tailor its sentence to the particular defendant and

8    to the particular case and particular facts then before the

9    Court.  And this is true because the guideline range should

9:28AM 10    not become a one-size-fits-all process.

11          So the factors in step two allow the Court these

12    customization mechanisms and they allow the Court ultimately

13    to make a determination about whether the guideline range is

14    truly an appropriate sentencing range in a particular case,

9:28AM 15    or whether that range might be too harsh or in some cases

16    whether that range might not be harsh enough.  So what are

17    the factors in step two?

18          In step two, the Court considers the nature of the

19    offenses as well as the totality of all of the facts and

9:29AM 20    circumstances that surround your offense conduct.  The Court

21    must also take into account your personal history and

22    background and characteristics, including the presence or

23    the lack of any criminal history.  The Court must also take

24    measure to avoid any unwarranted differences in sentences

9:29AM 25    imposed upon defendants with similar criminal histories who

9:29AM 1    have been convicted of the same or a substantially similar

2    criminal offense, or offenses, as the case may be.

3         At the end of the day, there is another sentencing

4    principle that the Court must apply and it sits on top of

9:30AM 5    all of these other factors.  This principle requires the

6    Court, at the end of the day after all the dust has settled,

7    to pinpoint a sentence that will be sufficient, but not

8    greater than necessary, to achieve the purposes of federal

9    sentencing.

9:30AM 10         So that's a summary of the factors in step two, and

11    I will apply those factors to the facts before me at

12    sentencing.  And when the question is ultimately called, the

13    question is, in Mr. Fant's case, does the guideline range

14    get it right?  And if so, the Court uses these same factors

9:30AM 15    to pinpoint exactly where within that range would be the

16    most appropriate.  But that's only one of three options that

17    the Court has.

18         If the Court concludes in your case, for example,

19    that the guideline range is too harsh, then the Court can

9:31AM 20    impose a sentence that is less severe than the guideline

21    range.  However, the third option would allow the Court to

22    impose a sentence that is more harsh, more severe than the

23    guideline range if the Court's judgment, after considering

24    all of the factors, was that the guideline range wasn't

9:31AM 25    harsh enough.

9:31AM 1          Mr. Fant, this is the sentencing framework I will

2     use when it's time for sentencing in your case.  Do you

3     understand this framework and the factors that hang upon it?

4          THE DEFENDANT:  Yes, Your Honor.

9:31AM 5          THE COURT:  There's another concept that I want to

6     make sure you understand.  The concept is known as relevant

7     conduct.  And this is mentioned in your plea agreement.

8          Under the concept of relevant conduct, the

9     government may make known to the Court any and all

9:32AM 10    information and evidence about you and about your offense

11    conduct that it has collected in the course of its

12    investigation of you in this matter.  And that information

13    and evidence is not limited to facts that support the two

14    offenses that you are proposing to plead guilty to.  In

9:32AM 15    fact, relevant conduct could be any and all information

16    about you and about your conduct that would allow the Court

17    to properly calculate the guideline range and to properly

18    identify how these other sentencing factors should be

19    weighed in your case.

9:33AM 20         Relevant conduct information is not limited to the

21    two counts that you have been charged with.  It could

22    include counts that you haven't been charged with or

23    offenses that you haven't been charged with.  All relevant

24    conduct information and evidence is fair game for the Court

9:33AM 25    to consider for sentencing purposes.

9:33AM    1            Do you understand this?

          2            THE DEFENDANT:  Yes, Your Honor.

          3            THE COURT:  Next, Mr. Fant, I need to make sure

          4     that there is a proper factual basis on which the Court can

9:33AM    5     consider the acceptance of your guilty pleas.  And here's

          6     how we are going to go about doing that:

          7            I'm going to ask the government's attorney,

          8     Mr. Elser, if he will make a statement of facts or if he

          9     will summarize the facts that the government is contending

9:34AM   10     that it could prove to a jury if you opted to take these two

         11     offenses to trial.  Now, essentially, Mr. Elser is going to

         12     be either reading or summarizing from paragraph 9 of your

         13     plea agreement beginning on page 3 under the heading of

         14     "Admission of factual basis."  You're welcome to follow

9:34AM   15     along, but I would like for you to keep something in mind.

         16            When Mr. Elser is finished, one of my questions for

         17     you is going to be whether you agree with and admit that

         18     these facts are true.  So please listen now to Mr. Elser and

         19     his factual basis.

9:35AM   20            MR. ELSER:  Your Honor, these are the facts the

         21     government can prove beyond a reasonable doubt:

         22            In February of 2023, the FBI and IRS began

         23     investigating the defendant, Jimmy D. Fant, Jr., based on a

         24     complaint that Fant had embezzled more than $5 million from

9:35AM   25     three jointly owned companies located in the Fayetteville,

Arkansas, area.  The investigation revealed the following:

White River Hardware and Woodworking, Inc. is a company located in the Western District of Arkansas with its office in Fayetteville, Arkansas, that has manufactured and sold wood and urethane moldings for more than 40 years.  The owners of White River also owned Matrix Investment, LLC and Castle Dromborg, LLC, which are Arkansas limited liability companies located in the Western District of Arkansas.

Fant worked as an accountant for White River beginning in 1999, was promoted to chief financial officer in 2015, and left his employment with White River in January of 2023.  As part of his employment with White River, Fant managed the finances of White River, Matrix, and Castle Dromborg and was an authorized person on bank accounts maintained by these entities at the Bank of Fayetteville, an FDIC insured bank, with locations in the Western District of Arkansas.  Fant was a salaried employee who was not authorized by White River to receive commission payments over and above his salary.

Beginning in 2013, White River used iSolved, Inc., a company headquartered in Charlotte, North Carolina, for timekeeping and payroll services.  Fant, as White River's billing contact person for iSolved, submitted White River's biweekly payroll information through iSolved's internet portal.  Based on the biweekly payroll information provided

by Fant, iSolved used a bank account at Zions First National Bank with principal office in Salt Lake City, Utah, to debit the total biweekly payroll amount from White River's Bank of Fayetteville account ending in 4026 and to make payroll payments by direct deposit to the bank accounts of White River employees, including Fant's Bank of Fayetteville account ending in 0094. Zions First National Bank accomplished the transfer of payroll funds between White River and its employees, including Fant, through the automated clearinghouse system, an electronic funds transfer system that uses interstate wire communications to settle funds between the iSolved Zions National Bank account and White River's Bank of Fayetteville account ending in 4026 and Fant's Bank of Fayetteville account ending in 0094.

After Fant left his employment in January of 2023, White River's new accountant discovered that beginning in August of 2014 and continuing to December of 2022, Fant used the iSolved internet portal to fraudulently add unauthorized commission payments totaling $3,921,184 to his salary amount. The amounts of the fraudulent commission payments escalated over time with White River paying Fant unauthorized commission payments in 2022 totaling $959,028.38. This was confirmed through records obtained from White River Bank of Fayetteville and iSolved.

In December 2022, Fant falsely and fraudulently

represented to iSolved through the iSolved internet portal that he was to receive from White River a commission payment of $44,659.31.  Fant's false and fraudulent representation that he was to receive a commission payment of $44,659.31 caused iSolved to use the ACH system to debit the fraudulent commission payment from White River's Bank of Fayetteville account ending 4026.

On or about December 29th of 2022, as a result of Fant's false and fraudulent representation that he was to receive a commission payment of $44,659.31, iSolved used the ACH system to directly deposit $42,238.97 to Fant's Bank of Fayetteville account ending 0094, which consisted of the fraudulent commission payment, plus Fant's salary payment of $2,769.23, minus payroll deductions of $5,189.57.

On or about December 29th, 2022, Fant used proceeds derived from the fraudulent commission payment made to Fant's Bank of Fayetteville account ending 0094 on December 29th, 2022, to obtain a $25,000 cashier's check from the Bank of Fayetteville.  This transaction constituted a monetary transaction by and through a financial institution affecting interstate commerce in criminally derived property of a value greater than $10,000.

The investigation also discovered that Fant had made unauthorized and fraudulent transfers from the White River Bank of Fayetteville account ending in 4026 totaling

9:40AM 1   $69,124.88 to pay his 401K contributions and $85,076.31 to

2   repay loans made to Fant from his 401K account; that Fant

3   had unauthorized and fraudulent transfers totaling

4   $813,742.97 from the Matrix Farmers and Merchants Bank

9:41AM 5   account ending in 5768 to Fant's Bank of Fayetteville

6   account ending 0094, and that Fant made unauthorized and

7   fraudulent transfers totaling $317,419.61 from the Castle

8   Dromborg Farmers and Merchants Bank account ending in 5182

9   to Fant's Bank of Fayetteville account ending in 0094.  Fant

9:41AM 10  also used the iSolved portal to overpay his salary in the

11  total amount of $60,396.64.

12          Fant's fraudulent overpayment of his salary,

13  including fraudulent commission payments, caused White River

14  to overpay the employer share of contributions for Fant to

9:42AM 15  Medicare in the total amount of $55,746.76 and social

16  security in the total amount of $32,405.56.

17          Based on the above evidence, the government could

18  prove beyond a reasonable doubt that the defendant committed

19  the offenses of wire fraud and money lawyering in the

9:42AM 20  Western District of Arkansas as alleged in the information.

21          THE COURT:  Thank you, Mr. Elser.

22          Mr. Fant, do you understand that those are the

23  facts that the government contends it could prove to a jury

24  if you opted to plead not guilty and to take this matter to

9:42AM 25  trial?

9:42AM 1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Do you agree and admit that each of

3      those facts are true?

4              THE DEFENDANT:  Yes, Your Honor.

9:42AM 5              THE COURT:  Mr. Alfaro, based on your

6      representation of Mr. Fant, do you agree that the government

7      could prove the facts as stated by Mr. Elser in open court?

8              MR. ALFARO:  Yes, Your Honor.

9              THE COURT:  Very well.  Mr. Fant, bearing in mind

9:43AM 10     all that has been discussed and explained this morning, I

11     will now ask you, first of all, how do you plead to the

12     charge of wire fraud in violation of federal law as more

13     specifically set forth in Count One of the information:

14             Do you plead guilty or do you plead not guilty?

9:43AM 15             THE DEFENDANT:  Guilty.

16             THE COURT:  Thank you.  Secondly, how do you plead

17     to the charge of money laundering in violation of federal

18     law as more specifically set forth in Count Two of the

19     information:

9:43AM 20             Do you plead guilty or do you plead not guilty?

21             THE DEFENDANT:  Guilty.

22             THE COURT:  All right.  Thank you very much,

23     Mr. Fant.  The Court will make these predicate findings:

24             Number one, Mr. Fant is fully competent and capable

9:43AM 25     of entering an informed plea.

9:44AM  1          Number two, Mr. Fant is aware of the nature of the
     2    two charges and the consequences of pleading guilty to them.
     3          Third, the Court finds that Mr. Fant's pleas of
     4    guilty are each knowing and voluntary.  Further, the Court
9:44AM  5    finds that the charges are supported by an independent bases
     6    in fact containing all of the essential elements of the
     7    offenses.
     8          On this premise, Mr. Fant, I will and hereby do
     9    accept your guilty pleas to both Count One and Count Two.
9:44AM 10    You are now adjudged guilty and will leave the courtroom
    11    convicted as charged in the information.
    12          Turning back to the plea agreement that we
    13    discussed earlier, I will not approve the plea agreement
    14    today.  I will defer that decision until the time of
9:45AM 15    sentencing and until I have had the benefit of reviewing a
    16    presentence investigation.  I see Probation Officer Alma
    17    Calderon in the courtroom.  That likely means that she's the
    18    officer that has been assigned the task of performing that
    19    investigation.
9:45AM 20          Mr. Fant, for your frame of reference, it typically
    21    takes about four months to move a case from the plea to the
    22    sentencing.  Sometimes in complex financial cases it takes a
    23    little bit longer, but our goal is going to be about four
    24    months.  There are some other matters that we need to take
9:45AM 25    up, though, before we adjourn.

9:45AM 1            The first is the information alleges a forfeiture
2    of certain items of property.  The plea agreement indicates
3    that you will be consenting to the forfeiture.  The Court
4    has been presented with a preliminary order of forfeiture
9:46AM 5    and this is with regard to assets that are specifically
6    identified in the form of the preliminary order, to include
7    cash and other items of personal property.
8            The Court has been provided with a copy of the
9    preliminary order that contains your signature, Mr. Fant, or
9:46AM 10   appears to contain your signature, as well as the attorney's
11   signature.  Did you review this preliminary order?
12           THE DEFENDANT:  Yes, Your Honor.
13           THE COURT:  Have you discussed it with Mr. Alfaro?
14           THE DEFENDANT:  Yes.
9:46AM 15           THE COURT:  Do you understand that you're giving
16   up, foregoing, waiving any and all interest to the items
17   specific or generally referenced in the preliminary order?
18           THE DEFENDANT:  Yes, Your Honor.
19           THE COURT:  The Court finds the form of the order
9:47AM 20   to be appropriate.  I've signed the preliminary order of
21   forfeiture and would ask that it be published to the docket.
22           The last item of business is whether Mr. Fant
23   should be remanded into custody pending sentencing or
24   whether he should be allowed to remain out on an appearance
9:47AM 25   bond.  What is the government's position?

9:47AM 1                MR. ELSER:  We have no objection to him remaining
2      out on conditions, Your Honor.
3                THE COURT:  The Court has reviewed a pretrial
4      services report, and based on the information in that report
9:48AM 5      and the government's stated position here today, Mr. Fant, I
6      will allow you to remain free on bond pending your
7      sentencing hearing.
8                Do you have a passport?
9                THE DEFENDANT:  No, sir.
9:48AM 10                THE COURT:  You have never traveled outside the
11      country?
12                THE DEFENDANT:  No, sir.
13                THE COURT:  Do you have any firearms?
14                THE DEFENDANT:  No, sir.
9:48AM 15                THE COURT:  Mr. Fant, after we adjourn today, the
16      clerk of court is going to present you with the appearance
17      bond that has been prepared.  The paperwork includes
18      numerous conditions that you must comply with.  It is
19      important that you read and understand each and every one of
9:49AM 20      those conditions, because if you are found to be in
21      violation of any of those conditions, this Court will not
22      hesitate to remand you into custody pending your sentencing.
23                Do you understand this?
24                THE DEFENDANT:  Yes, Your Honor.
9:49AM 25                THE COURT:  All of the conditions are equally

9:49AM  1   important, but I want to highlight a couple of them.

2          One is the firearm condition.  You may not possess

3   a firearm.  The term "possession" is not limited to a gun

4   strapped to your hip.  It could include a gun in the trunk

9:50AM  5   of your car or in an outbuilding on your property.  Any such

6   possession would be a very serious violation.

7          You also have a travel restriction.  Normally,

8   travel is restricted to the Fayetteville Division of the

9   Western District of Arkansas, which consists of Benton

9:50AM  10   County, Washington County, and Madison County.

11          Where are you living right now?

12          THE DEFENDANT:  Sequoyah County, Oklahoma.

13          THE COURT:  Is that a border county to Arkansas?

14          THE DEFENDANT:  It's about 10 miles outside of

9:51AM  15   Ft. Smith.

16          THE COURT:  Outside of Ft. Smith.  So if you go

17   from your house, for example, to visit with Mr. Alfaro in

18   Fayetteville, would you go through Ft. Smith and come up 49?

19          THE DEFENDANT:  Yes, sir.

9:51AM  20          THE COURT:  So you would go through Sebastian

21   County and Crawford County before you reached Washington

22   County?

23          THE DEFENDANT:  Yes, sir.

24          MR. ALFARO:  Your Honor, if I may.

9:51AM  25          THE COURT:  Yes.

9:51AM  1          MR. ALFARO:  It just seems appropriate to bring
       2   this up.  To the extent that the Court was considering the
       3   condition as worded in the pretrial services report, we
       4   would request to add the Ft. Smith division as well for the
9:51AM  5   reasons the Court seems to be addressing right now regarding
       6   travel.  But also Mr. Fant has several doctors at Baptist
       7   Health in Ft. Smith that he sees regularly, so we would
       8   request that addition.  Thank you.
       9          THE COURT:  So your travel is going to be
9:52AM 10   restricted, Mr. Fant, to Sequoyah County, Oklahoma.  And I
      11   need that change, Ms. Craig.  It currently says "Eastern
      12   District of Oklahoma."  That's not right.  The travel will
      13   be restricted to Sequoyah County, Oklahoma, Sebastian
      14   County, Crawford County, and Washington County, Arkansas.
9:53AM 15   You can't travel outside of those counties.
      16          Do you understand?
      17          THE DEFENDANT:  Yes, sir.
      18          THE COURT:  All right.  Another important -- they
      19   are all important -- but another important item that we have
9:53AM 20   recently ran into some problems with.
      21          You can't establish any new bank accounts or any
      22   type of financial account without first notifying and
      23   receiving the permission of your probation officer that you
      24   will be assigned to today.  Do you understand that?
9:53AM 25          THE DEFENDANT:  Yes, Your Honor.

9:53AM   1          THE COURT:  You are also prohibited from
         2   transferring any funds without notifying your probation
         3   officer and getting their permission.
         4          Do you understand that?
9:54AM   5          THE DEFENDANT:  Yes, Your Honor.
         6          THE COURT:  All right.  After we adjourn, the clerk
         7   will get with you and Mr. Alfaro to sign off on the
         8   paperwork.  Mr. Alfaro, have you all checked in with the
         9   Marshals office?
9:54AM  10          MR. ALFARO:  I don't believe so, Your Honor.
        11          THE COURT:  All right.  You need to check in with
        12   the Marshal's office on the first floor before you leave and
        13   you also need to visit with Ms. Calderon and she will get
        14   you hooked up with your pretrial services probation officer.
9:54AM  15          Any questions?
        16          THE DEFENDANT:  No, sir.
        17          THE COURT:  All right.  Anything else the
        18   government would like to take up?
        19          MR. ELSER:  No, Your Honor.
9:54AM  20          THE COURT:  Anything else, Mr. Alfaro?
        21          MR. ALFARO:  No, Your Honor.
        22          THE COURT:  We're adjourned.
        23          (proceedings concluded at 9:54 a.m.)
        24
        25

C E R T I F I C A T E

I, Paula K. Barden, RPR, RMR, FCRR, Federal Official Court Reporter, in and for the United States District Court for the Western District of Arkansas, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 4th day of June 2024.



------------------------------------
PAULA K. BARDEN, RPR, RMR, FCRR #700
Federal Official Court Reporter
Western District of Arkansas

